JUDGE CASTEL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

10 CV 5168

---------------------------------------------------------x
FOREST PARK PICTURES, TOVE :
CHRISTENSEN, and HAYDEN CHRISTENSEN, :
:
                Plaintiffs, : **COMPLAINT**
: **WITH JURY DEMAND**
      - against - :
:
USA NETWORK, INC., :
:
                Defendants. :x
---------------------------------------------------------

RECEIVED JUL - 6 2010 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiffs, Forest Park Pictures, Tove Christensen, and Hayden Christensen, by their attorneys, Liddle & Robinson, L.L.P., for their Complaint allege as follows:

## NATURE OF THE ACTION

1. This is a civil action for damages arising from (a) a breach of an implied contract by Defendant USA Network, Inc. ("USA Network"); (b) unfair competition in violation of 17200 of the California Business and Professions Code; and (c) USA Network's unjust enrichment.

## THE PARTIES

2. Forest Park Pictures was a California-based production company located in Los Angeles, California. Forest Park Pictures, which is no longer an active corporation, was engaged in the business of producing television and movies.

3. Tove Christensen is an individual who resides in California.

4. Hayden Christensen is an individual who resides in Canada.

5. USA Network is a television production company based in New York, New York. USA Network is a wholly subsidiary of NBC Universal, Inc. USA Network is headquartered at 30 Rockefeller Plaza, New York, New York.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 (diversity jurisdiction) and 1367 (supplemental jurisdiction). The amount in controversy exceeds $75,000.

7. Venue is proper in this district under 28 U.S.C. §§ 1391(a) and (c) because defendant is subject to personal jurisdiction in this district. USA Network has its headquarters in New York, New York, and the television show that is the subject of this complaint is produced and filmed in this District.

## FACTS

8. In 2005, Plaintiffs conceived a novel idea and treatment for a television series titled "Housecall" based on the life Bret Robert Cohen, M.D., who worked as a concierge doctor (or a doctor who makes house calls) in Malibu, California. The concept for the series was as follows:

- The main character was a young doctor with "a heart of gold" who was expelled from the traditional medical community because of his refusal to turn his back on a patient who could not pay;

- After losing his job, the main character leaves the city where he worked and moves to the beach community located in Malibu, California with his best friend;

- Through a series of unintended occurrences, the main character begins working as a concierge doctor in Malibu, making house calls to rich and famous clients;

- The main character's job as a concierge doctor impacts his personal relationships;
- The show was a comedic drama.

9. At the time of the events in question, USA Network knew that the pitching of creative ideas for compensation was part and parcel of Plaintiffs' livelihood and business. Moreover, the individuals who Plaintiffs met with, including Alex Sepiol, who was at the time Manager, Original Scripted Series Programming at USA Networks, worked in the entertainment industry, and at all relevant times knew (a) that writer-creators pitch creative ideas to prospective purchasers with the object of selling those ideas for compensation; and (b) that it was standard in the entertainment industry for ideas to be pitched with the expectation of compensation in the event of use.

10. After conceiving of this idea for a television series, Plaintiffs worked with Actual Reality to create a treatment, which included character biographies, concepts, themes, and plot/story lines

11. On or around November 8, 2005, Plaintiffs sent Mr. Sepiol materials related to the pitch of "Housecall," including a treatment, character biographies, and show ideas. The express purpose of sending this material to Mr. Sepiol was to pitch creative ideas to USA Network for a television series. It was understood that Plaintiffs were pitching those ideas with the object of persuading USA Network to purchase those ideas for commercial development, and/or to employ Plaintiffs in the production of those ideas.

12. After Plaintiffs sent these materials to USA Network, Plaintiffs told Mr. Sepiol that they wanted to meet with him to pitch the show. Mr. Sepiol scheduled a meeting with Plaintiffs for the express purpose of hearing Plaintiffs pitch "Housecall." Mr. Sepiol did not

tell Plaintiffs, directly or indirectly, that USA Network had or was developing a similar series whose main character was a concierge doctor in a fancy beach community who was expelled by the conventional medical community.

13. On November 14, 2005, Tove Christensen and Peter Michaels, who worked for Forest Park Pictures as a Vice President, Television Production, met with Mr. Sepiol and one of his colleagues at the offices of USA Network in Universal City, California. The express purpose of this meeting was for Plaintiffs to pitch "Housecall" to USA Network. It was understood that Plaintiffs were pitching those ideas with the object of persuading USA Network to purchase those ideas for commercial development, and/or to employ Plaintiffs in the production of those ideas.

14. At this meeting, Plaintiffs told Mr. Sepiol and his colleague, among other things, that "Housecall" was about a doctor with "a heart of gold," who is expelled from the conventional medical community because he insists on treating a patient who cannot pay, and is forced to relocate from the city where he lived to the exclusive beach community of Malibu, California. Once in Malibu, the main character becomes a concierge doctor, or a doctor who makes house calls, to the rich and famous residents of Malibu. The main character has a best friend who also lives in Malibu who helps the main character get clients and, unlike the main character, wants very badly to be part of the rich and famous set of Malibu. The show was a comedic drama.

15. At no time during this meeting did any employee of the Defendant state, directly or indirectly, that USA Network had or was developing a similar series concept. At no time during the meeting did any employee of Defendant ask Plaintiffs to stop their presentation regarding a series whose main character was a concierge doctor in a fancy beach community

who was expelled by the conventional medical community. In fact, at the meeting on November 14, 2005, Mr. Sepiol told Plaintiffs that, prior to learning about "Housecall," he was unaware of concierge doctors, and that he thought it was a fascinating concept for a television show. The meeting ended on a positive note.

16. Over the next week, Mr. Sepiol and Plaintiffs had further communications regarding USA Network acquiring "Housecall." USA Network ultimately passed on the project.

17. Unbeknownst to Plaintiffs, USA Network misappropriated Plaintiffs' ideas (including their characters, series concept, and story lines) and secretly produced its own television series based on those ideas.

18. Without Plaintiffs' knowledge or consent, USA Network produced a whole television series titled "Royal Pains" based upon and utilizing the detailed ideas and story lines Plaintiffs had pitched as "Housecall." The "Royal Pains" series utilized the following ideas that were misappropriated from Plaintiffs' series: the main character of "Royal Pains" is a doctor with "a heart of gold" expelled from the conventional medical community after he refused to deny treatment to a patient who cannot pay, and relocates to an exclusive beach community in the Hamptons, where, with the help of his brother, he becomes a concierge doctor to the rich and famous set. The main character's brother, like the best friend character in "Housecall," helps the concierge doctor get clients and wants to become a part of the rich and famous set. The show is a comedic drama.

19. Plaintiffs learned that USA Network had decided to produce and broadcast "Royal Pains" during the summer of 2009, when the first season of "Royal Pains" aired on USA Network. USA Network has begun broadcasting a second season in the summer of 2010.

20. USA Network has deceived the public by falsely stating that individuals other than Plaintiffs created "Royal Pains."

21. USA Network continues to produce and broadcast episodes of "Royal Pains."

22. At no time did USA Network ever request or obtain Plaintiffs' consent to use the above-referenced ideas. USA Network has not compensated Plaintiffs for the value of his contributions. Using Plaintiffs' series concepts, USA Network has made millions. Plaintiffs, on the other hand, have received nothing out of "Royal Pains."

## FIRST CLAIM
(Breach of Implied Contract)

23. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 22, as if separately set forth herein.

24. Plaintiffs prepared and submitted novel ideas for a television series, including an oral presentation, a written treatment, character biographies, and proposed scenes, to USA Network. As alleged herein, Plaintiffs ideas for a television series centered around a doctor with "a heart of gold" who is expelled from the conventional medical community and becomes a concierge doctor in a rich and fancy beach community.

25. In the entertainment industry, television story pitches are intended to, among other thing, interest studios or producers in purchasing those ideas and turning them into a series for commercial broadcast. USA Network voluntarily accepted Plaintiffs' ideas knowing full well that Plaintiffs had submitted those ideas in confidence and for economic gain, and with the clear expectation of payment in the event those ideas were utilized by USA Network in a production series, or other commercial setting. When USA Network agreed to meet with

Plaintiffs to discuss "Housecall," USA Network made it clear that it was interested in the "Housecall" concept and characters for possible production of a series.

26. USA Network had an opportunity to reject the ideas contained in Plaintiffs' disclosures and submissions. Instead, USA Network accepted Plaintiffs' ideas and turned them into an enormously valuable series called "Royal Pains," a series centered around a doctor with "a heart of gold" who is expelled from the conventional medical community and becomes a concierge doctor in a rich and fancy beach community.

27. USA Network continues to produce and broadcast episodes of "Royal Pains" without compensating Plaintiffs, thereby continuing its breach of contractual obligations owed to Plaintiffs.

28. Using Plaintiffs' series concepts, as embodied in a written treatment and scenes and statement made by Plaintiffs to USA Network, USA Network has made millions of dollars in profit. As a direct and proximate result of Defendant's actions, Plaintiffs have been damaged in an amount to be determined at trial, and is believed to exceed several million dollars, including but not limited to, the value of Plaintiffs' ideas, and loss of a share of the profits derived from their ideas. Plaintiffs' losses are ongoing.

**SECOND CLAIM**
(Unfair Competition)

29. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 28, as if separately set forth herein.

30. California Business and Professions Code section 17200 prohibits unlawful, deceptive, unfair or fraudulent business practices.

31. The above alleged conduct of USA Network amounts to unlawful, deceptive, unfair or fraudulent business practices in violation of 17200 of the Business and

Professions Code in that USA Network has misappropriated Plaintiffs' series concept and ideas, which USA Network represents to be its own.

32. The above alleged conduct of USA Network was for the purpose of injuring Plaintiffs in their business, and has injured Plaintiffs in their business.

33. USA Network continues to produce and broadcast episodes of "Royal Pains," without compensating Plaintiffs, thereby continuing its breach of obligations owed to Plaintiffs.

34. Using Plaintiffs' series concepts, as embodied in a written treatment and scenes and by oral communications, USA Network has made many millions of dollars in profit. As a direct and proximate result of USA Network's actions, Plaintiffs have been damaged in an amount to be determined at trial, and is believed to exceed millions of dollars, including, but not limited to, the value of Plaintiffs' ideas, and profits obtained by USA Network derived from their ideas. Plaintiffs' losses are ongoing.

35. Plaintiffs are entitled to injunctive relief, disgorgement of all profits resulting from these unfair business practices, and restitution and other appropriate relief.

### THIRD CLAIM
(Unjust Enrichment)

36. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 35, as if separately set forth herein.

37. USA Network induced Plaintiffs to disclose their work to them in confidence, in the form of their distinct and original work of authorship of the characters and story that became "Royal Pains," and with the expectation of reasonable compensation in the event that USA Network made commercial use of that work. That work was submitted to USA Network in or about November 2005, and USA Network viewed Plaintiffs' work at that time.

38.     USA Network received all benefits which it sought in inducing Plaintiffs to disclose their work, in the form of their distinct and original work of authorship of the characters and story that became "Royal Pains." In particular, USA Network created a television series based on Plaintiffs' concepts, themes, characters, treatment, and plot/story lines. USA Network called its show "Royal Pains."

39.     Without compensating Plaintiffs, USA Network has produced and broadcast episodes of the show based on Plaintiffs' concepts, themes, characters, treatment, and plot/story lines. In so doing, USA Network has unjustly received and retained benefits from the work of, and at the expense of, Plaintiffs.

40.     To prevent injustice and unjust enrichment, USA Network is obligated to compensate Plaintiffs for the reasonable value of what was taken from them, including profits generated from Plaintiffs' work.

41.     Under the circumstances, it is just and equitable that restitution be made to Plaintiffs for the reasonable value of their work, including profits received from the "Royal Pains" concept and exploitation thereof.

42.     Any failure to compensate Plaintiffs would result in injustice to Plaintiffs, since they disclosed their work to USA Network with the understanding that it would reasonably compensate Plaintiffs for those ideas.

43.     The amount of Plaintiffs damages will be proven at trial, and are believed to be in the millions of dollars.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A.  On the First Claim, general and special damages according to the proof, plus interest, and all other relief as the Court deems just and proper;

B.  On the Second Claim, general and special damages according to the proof; attorneys' fees and costs incurred in this matter; punitive damages; injunctive relief enjoining USA Network from engaging in each of the unlawful practices, policies, usages, and customs complained of herein; trebling of damages under the applicable statute; and all other relief as the Court deems just and proper;

C.  On the Third Claim, general and special damages according to the proof, plus interest, and all other relief as the Court deems just and proper; and

D.  Such other and further relief as the Court deems appropriate under the circumstances.

Dated: New York, New York
       July 6, 2010

LIDDLE & ROBINSON, L.L.P.

By: _____
    David Marek (DM 2083)
Attorneys for Plaintiff
800 Third Avenue
New York, New York 10022
(212) 687-8500

