N.Y.S.D. Case #
10-cv-5168(CM)

11-2011-cv
Forest Park Pictures v. Universal Television Network, Inc.

1                   UNITED STATES COURT OF APPEALS

2                       FOR THE SECOND CIRCUIT

3

4                         August Term 2011

5           (Argued: November 14, 2011    Decided: June 26, 2012)

6                       Docket No. 11-2011-cv

7      ----------------------------------------------------x
8
9      FOREST PARK PICTURES, TOVE CHRISTENSEN, and HAYDEN
10     CHRISTENSEN,
11
12             Plaintiffs-Appellants,
13
14                         -- v. --
15
16     UNIVERSAL TELEVISION NETWORK, INC.,
17
18             Defendant-Appellee.
19
20
21     ----------------------------------------------------x
22
23     B e f o r e :  WALKER, RAGGI and LIVINGSTON, Circuit Judges.

24          Plaintiffs-Appellants Forest Park Pictures, Tove

25     Christensen, and Hayden Christensen appeal from an order of the

26     United States District Court for the Southern District of New

27     York (Colleen McMahon, Judge) granting Defendant-Appellee

28     Universal Television Network's motion to dismiss on the grounds

29     that this breach of contract action is preempted by the Copyright

30     Act.  We reach a different conclusion.  Plaintiffs-Appellants

31     adequately alleged a contract that includes an implied promise to

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 26, 2012

1

CERTIFIED COPY ISSUED ON 06/26/2012

pay.  Because this claim is based on rights that are not the

equivalent of those protected by the Copyright Act, it is not

preempted.  VACATED and REMANDED.

> DAVID MAREK (John R. Halter, <u>on the
> brief</u>), Liddle & Robinson, L.L.P.,
> New York, New York, <u>for Plaintiffs-
> Appellants</u>.
>
> SUSAN WEINER, NBCUniversal Media,
> LLC, New York, New York (Robert
> Penchina and Amanda M. Leith,
> Levine Sullivan Koch & Schulz,
> L.L.P., New York, New York, <u>on the
> brief</u>), <u>for Defendant-Appellee</u>.

JOHN M. WALKER, JR., <u>Circuit Judge</u>:

This dispute over the concept for a television show presents

the question of the extent to which the Copyright Act, 17 U.S.C.

§ 101 <u>et seq.</u>, preempts contract claims involving copyrightable

property.  Plaintiffs-Appellants Forest Park Pictures, Hayden

Christensen, and Tove Christensen (collectively, "Forest Park")

developed an idea for a television series and created a writing

that embodied it, known in the industry as a "series treatment."

Forest Park submitted its idea, first by mail and then in person,

to Defendant-Appellee USA Network, a division of Universal

Television Network, Inc. ("USA Network").  Forest Park alleges an

implied promise by USA Network to pay reasonable compensation if

the idea were used.  The District Court for the Southern District

of New York (Colleen McMahon, <u>Judge</u>) held that the Copyright Act

preempted a breach of contract claim based on idea submission,

and granted USA Network's motion to dismiss.  We reach a

different conclusion.  Forest Park adequately alleged the breach

of a contract that included an implied promise to pay.  Because

this claim is based on rights that are not the equivalent of

those protected by the Copyright Act, it is not preempted.


**BACKGROUND**

**Facts**

Because Forest Park appeals from an order dismissing the

complaint on the pleadings, we accept as true the facts alleged

in the Third Amended Complaint ("Complaint").  See Hutchison v.

Deutsche Bank Sec. Inc., 647 F.3d 479, 481 (2d Cir. 2011).  In

2005, Forest Park formulated a concept for a television show

called "Housecall," in which a doctor, after being expelled from

the medical community for treating patients who could not pay,

moved to Malibu, California, and became a "concierge" doctor to

the rich and famous.  Forest Park created a written series

treatment for the idea, including character biographies, themes,

and storylines.  It mailed this written material to Alex Sepiol,

who worked for USA Network.

After sending the written materials, Forest Park requested a

meeting between its representatives and Sepiol.  Sepiol scheduled

the meeting "for the express purpose of hearing Plaintiffs pitch"

their show.  Complaint ¶ 12.  At the time, Sepiol and USA Network

1    knew "that writer-creat[o]rs pitch creative ideas to prospective

2    purchasers with the object of selling those ideas for

3    compensation" and "that it was standard in the entertainment

4    industry for ideas to be pitched with the expectation of

5    compensation in the event of use."  Id. ¶ 9.  And, at the

6    meeting, "[i]t was understood that Plaintiffs were pitching those

7    ideas with the object of persuading USA Network to purchase those

8    ideas for commercial development."  Id. ¶ 13.  Sepiol said that

9    prior to hearing the idea for "Housecall," he had never heard of

10   "concierge" doctors, or doctors who make house calls for wealthy

11   patients, and "thought it was a fascinating concept for a

12   television show."  Id. ¶ 15.  Over the course of the following

13   week, Sepiol and Forest Park exchanged further communications;

14   however, discussions soon ceased and no further contact between

15   the parties ensued.

16        A little less than four years later, USA Network produced

17   and aired a television show called "Royal Pains," in which a

18   doctor, after being expelled from the medical community for

19   treating patients who could not pay, became a concierge doctor to

20   the rich and famous in the Hamptons.  Forest Park had no prior

21   knowledge of "Royal Pains," did not consent to its production,

22   and received no compensation from USA Network for the use of its

23   idea for the show.

24

4

1    **Prior Proceedings**

2        Forest Park Pictures, located in California, and the

3    Christensens, residents of California and Toronto, Canada,

4    brought a diversity action against USA Network and Universal

5    Television Network, a New York corporation, for breach of

6    contract.  USA Network moved under Federal Rule of Civil

7    Procedure 12(b)(6) to dismiss the Complaint on the grounds that

8    the Copyright Act preempted the claim and that the contract was

9    too vague to be enforced.  The district court held the claim

10   preempted and dismissed the Complaint without addressing the

11   vagueness argument.  <u>Forest Park Pictures v. Universal Television</u>

12   <u>Network, Inc.</u>, No. 10 Civ. 5168(CM), 2011 WL 1792587, at * 3,

13   2011 U.S. Dist. LEXIS 50081, at *9 (S.D.N.Y. May 10, 2011).

14   Forest Park timely appealed the dismissal.

15

16                        **DISCUSSION**

17       This appeal presents two questions:  first, whether Forest

18   Park's breach of implied contract claim is preempted by the

19   Copyright Act; and second, if such a claim is not preempted,

20   whether Forest Park adequately pleaded a claim under state law.

21   We hold that Forest Park's claim is not preempted and that the

22   Complaint pleads an enforceable contract under state law that

23   survives a motion to dismiss.

5

1    We review de novo a district court's dismissal of a

2  complaint under Rule 12(b)(6), accepting all of the complaint's

3  factual allegations as true and drawing all reasonable inferences

4  in the plaintiffs' favor.  Interpharm, Inc. v. Wells Fargo Bank,

5  Nat'l Ass'n, 655 F.3d 136, 141 (2d Cir. 2011).  The complaint

6  must state a claim that is plausible on its face.  Bell Atl.

7  Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim has "facial

8  plausibility when the plaintiff pleads factual content that

9  allows the court to draw the reasonable inference that the

10  defendant is liable for the misconduct alleged."  Ashcroft v.

11  Iqbal, 556 U.S. 662, 678 (2009).

12  **I.   Preemption**

13    We first turn to USA Network's argument that Forest Park's

14  claim is preempted.  Section 301 of the Copyright Act expressly

15  preempts a state law claim only if (i) the work at issue "come[s]

16  within the subject matter of copyright" and (ii) the right being

17  asserted is "equivalent to any of the exclusive rights within the

18  general scope of copyright."  17 U.S.C. § 301(b); see Barclays

19  Capital Inc. v. Theflyonthewall.com, Inc., 650 F.3d 876, 892 (2d

20  Cir. 2011).

21    **A. Subject Matter Requirement**

22    In order to be preempted, a claim must involve a work

23  "within the subject matter of copyright."  17 U.S.C. § 301(a).

24  Copyright protection exists for "original works of authorship

6

1    fixed in any tangible medium of expression," but does not extend

2    to an "idea, . . . regardless of the form in which it is

3    described, explained, illustrated, or embodied."  17 U.S.C.

4    § 102(a), (b).  We have held, however, that works may fall within

5    the subject matter of copyright, and thus be subject to

6    preemption, even if they contain material that is uncopyrightable

7    under section 102.  See Barclays Capital, 650 F.3d at 892; Nat'l

8    Basketball Ass'n v. Motorola, Inc. ("NBA"), 105 F.3d 841, 849 (2d

9    Cir. 1997); Harper & Row, Publishers, Inc. v. Nation Enters., 723

10   F.2d 195, 200 (2d Cir. 1983), rev'd on other grounds, 471 U.S.

11   539 (1985).  See generally 4 Melville B. Nimmer & David Nimmer,

12   Nimmer on Copyright § 19D.03[A][2][b] (2011).  In Harper & Row,

13   for example, the work at issue, President Ford's memoirs,

14   contained uncopyrightable facts.  723 F.2d at 200.  Nevertheless,

15   we held that the factual content of the book did not remove the

16   work as a whole (indisputably a literary work of authorship, see

17   § 102(a)(1) from the subject matter of copyright.  Harper & Row,

18   723 F.2d at 200; see also Barclays Capital, 650 F.3d at 892, 902.

19   Similarly, in Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d

20   296 (2d Cir. 2004), we held that a novel fell within "the broad

21   ambit of the subject matter categories" listed in section 102(a)

22   despite containing uncopyrightable ideas.  Id. at 306.  The scope

23   of copyright for preemption purposes, then, extends beyond the

24   scope of available copyright protection.

1      The reason for our broad interpretation of the scope of

2    copyright preemption is that Congress, in enacting section 301,

3    created a regime in which some types of works are copyrightable

4    and others fall into the public domain.  See NBA, 105 F.3d at

5    849.  In preempting certain state causes of action, Congress

6    deprived the states of the power to "vest exclusive rights in

7    material that Congress intended to be in the public domain."

8    Id.; see also Harper & Row, 723 F.2d at 200 (recognizing that it

9    would "run directly afoul of one of the Act's central purposes"

10   to allow the states to expand copyright protection to works

11   Congress deemed uncopyrightable).  Section 301's preemption

12   scheme functions properly only if the "'subject matter of

13   copyright' includes all works of a type covered by sections 102

14   and 103, even if federal law does not afford protection to them."

15   NBA, 105 F.3d at 850 (quoting ProCD, Inc. v. Zeidenberg, 86 F.3d

16   1447, 1453 (7th Cir. 1996)).

17      The work at issue in this case is Forest Park's idea for

18   "Housecall," manifested in the series treatment (comprising

19   character biographies, themes, and storylines).  This treatment

20   and associated written materials are "works of authorship that

21   are fixed in a tangible medium."  17 U.S.C. § 301(a).  Although

22   Forest Park's Complaint does not allege that USA Network took its

23   actual scripts or biographies, the subject matter requirement is

24   met because the Complaint alleges that USA Network used the ideas

8

embodied in those written works.  That the work contains within

it some uncopyrightable ideas does not remove it from the subject

matter of copyright.  See Briarpatch, 373 F.3d at 305.  Moreover,

because the ideas that are the subject of the claim were fixed in

writing—whether or not the writing itself is at issue—the claim

is within the subject matter of copyright.  See NBA, 105 F.3d at

849; see also Montz v. Pilgrim Films & Television, Inc., 649 F.3d

975, 979 (9th Cir. 2011) (en banc) (holding that an idea for a

television show, once fixed in a tangible medium, fell within the

subject matter of copyright); Wrench LLC v. Taco Bell Corp., 256

F.3d 446, 455 (6th Cir. 2001) (holding that an idea for a

character, conveyed in storyboards, scripts, and drawings, was

within the subject matter of copyright).  Therefore, the first

requirement for preemption is met.

**B. Equivalency Requirement**

     In order to establish preemption, USA Network must also

demonstrate that the Complaint seeks to vindicate a "legal or

equitable right[] that [is] equivalent to any of the exclusive

rights within the general scope of copyright as specified by

section 106."  17 U.S.C. § 301(a).  Section 106 gives copyright

owners the exclusive rights, among other things, to reproduce a

copyrighted work, to prepare derivative works, to distribute

copies of the work to the public, and to display the work

publicly.  17 U.S.C. § 106.  A state law right is equivalent to

1    one of the exclusive rights of copyright if it "may be abridged

2    by an act which, in and of itself, would infringe one of the

3    exclusive rights." Harper & Row, 723 F.2d at 200.  "But if an

4    extra element is required instead of or in addition to the acts

5    of reproduction, performance, distribution or display, in order

6    to constitute a state-created cause of action," there is no

7    preemption.  Computer Assocs. Int'l, Inc. v. Altai, Inc., 982

8    F.2d 693, 716 (2d Cir. 1992) (internal quotation marks omitted).

9         Applying this "extra element" test, we have held numerous

10   categories of claims to be not preempted, including trade secret

11   claims, in which the plaintiff must show the defendant breached a

12   duty of trust through improper disclosure of confidential

13   material, id. at 717; certain "hot news" misappropriation claims,

14   because the plaintiff must show time-sensitive factual

15   information, free-riding by the defendant, and a threat to the

16   very existence of the plaintiff's product, NBA, 105 F.3d at 853;

17   and breach of confidential relationship, in which the plaintiff

18   must show an obligation not to disclose ideas revealed in

19   confidence, Smith v. Weinstein, 578 F. Supp. 1297, 1307 (S.D.N.Y.

20   1984), aff'd without opinion, 738 F.2d 419 (2d Cir. 1984).  See

21   also Harper & Row, 723 F.2d at 201 (in dictum, suggesting that

22   conversion based on physical possession and control of a

23   copyrighted work may not be preempted because such a tort

24   involves "acts . . . qualitatively different from those

10

1  proscribed by copyright law"). By contrast, we have found a

2  state law claim preempted when the extra element changes the

3  scope but not the fundamental nature of the right.  <u>See, e.g.</u>,

4  <u>Briarpatch</u>, 373 F.3d at 306-07 (holding an unjust enrichment

5  claim preempted because, although plaintiff must prove

6  "enrichment," the essential nature of the claim remained the

7  unauthorized use of a work); <u>Fin. Info., Inc. v. Moody's</u>

8  <u>Investors Serv., Inc.</u>, 808 F.2d 204, 208 (2d Cir. 1986) (holding

9  that a misappropriation claim was preempted because the element

10  of commercial immorality did not change qualitative nature of the

11  right); <u>Harper & Row</u>, 723 F.2d at 201 (holding that a claim of

12  conversion based on unauthorized publication of a work was

13  preempted because it is "coextensive with an exclusive right

14  already safeguarded by the Act").

15     In this case, the issue is whether a particular breach of

16  contract claim survives preemption.  More specifically, Forest

17  Park alleges that it entered into an implied-in-fact agreement

18  with USA Network that required USA Network to pay Forest Park for

19  the use of its idea.  <u>See</u> Complaint ¶¶ 24-26.  There are several

20  qualitative differences between such a contract claim and a

21  copyright violation claim.  First, the Copyright Act does not

22  provide an express right for the copyright owner to receive

23  payment for the use of a work.  It simply gives the copyright

24  owner the right to prevent distribution, copying, or the creation

1   of derivative works (though, of course, the copyright owner may

2   cede or all part of these rights for payment).   See 17 U.S.C.

3   § 106.   Second, a plaintiff suing for failure to pay under a

4   contract must prove extra elements beyond use or copying,

5   including mutual assent and valid consideration.   Third, a breach

6   of contract claim asserts rights only against the contractual

7   counterparty, not the public at large.   As the Seventh Circuit

8   explained in ProCD, "A copyright is a right against the world.

9   Contracts, by contrast, generally affect only their parties;

10   strangers may do as they please, so contracts do not create

11   'exclusive rights.'"   86 F.3d at 1454.

12       A number of our sister circuits have accordingly concluded

13   that at least some contract claims involving the subject matter

14   of copyright do not contest rights that are the equivalent of

15   rights under the Copyright Act, and thus are not preempted.   See

16   Montz, 649 F.3d at 980-81 (implied-in-fact contract); Utopia

17   Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C., 596 F.3d

18   1313, 1326-27 (11th Cir. 2010) (express contract); Bowers v.

19   Baystate Techs., Inc., 320 F.3d 1317, 1324-26 (Fed. Cir. 2003)

20   (applying First Circuit law to an express contract in a software

21   license); Wrench, 256 F.3d at 456 (implied-in-fact contract);

22   ProCD, 86 F.3d at 1454-55 (express contract in a software

23   license); Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l,

24   Inc., 991 F.2d 426, 431 (8th Cir. 1993) (express licensing

12

agreement); <u>Taquino v. Teledyne Monarch Rubber</u>, 893 F.2d 1488, 1490, 1501 (5th Cir. 1990) (express contract); <u>Acorn Structures, Inc. v. Swantz</u>, 846 F.2d 923, 926 (4th Cir. 1988) (per curiam) (express contract); <u>see also</u> 4 Nimmer § 19D.03[C][2] ("As a general rule, contract claims require proof of a significant 'extra element': the existence of an actual agreement between plaintiff and defendant involving a promise to pay for use of disclosed ideas.  That conclusion is the same, regardless of whether the particular claim at issue is labeled express contract [or] implied-in-fact contract . . . ." (footnotes omitted)).  Of course, preemption cannot be avoided simply by labeling a claim "breach of contract."  A plaintiff must actually allege the elements of an enforceable contract (whether express or implied-in-fact), including offer, acceptance, and consideration, in addition to adequately alleging the defendant's breach of the contract.

As long as the elements of a contract are properly pleaded, there is no difference for preemption purposes between an express contract and an implied-in-fact contract.  <u>See, e.g.</u>, <u>Leibowitz v. Cornell Univ.</u>, 584 F.3d 487, 507 (2d Cir. 2009) (under New York law, proof of an implied-in-fact contract requires proof of the same elements as an express contract); <u>Warner Bros. Int'l Television Distribution v. Golden Channels & Co.</u>, 522 F.3d 1060, 1069 (9th Cir. 2008) (same under California law).  There is,

1   however, a significant difference for preemption purposes between

2   contracts implied-in-fact and contracts implied-in-law.  Theories

3   of implied-in-law contract, quasi-contract, or unjust enrichment

4   differ significantly from breach of contract because the

5   plaintiff need not allege the existence of an actual agreement

6   between the parties.  See 1-1 Corbin on Contracts § 1.20 ("A

7   contract 'implied in law' is a fictitious contract. . . . A

8   contract 'implied in fact' is a true contract that arises from

9   the tacit agreement of the parties.").  Under these quasi-

10  contractual theories, the plaintiff need only prove that the

11  defendant was unjustly enriched through the use of her idea or

12  work.  Such a claim is not materially different from a claim for

13  copyright infringement that requires a plaintiff to prove that

14  the defendant used, reproduced, copied, or displayed a

15  copyrighted work.  See Briarpatch, 373 F.3d at 306 (finding no

16  extra element in an unjust enrichment claim); see also Wrench,

17  256 F.3d at 459 (noting that there is "a crucial difference"

18  between implied-in-fact contracts and implied-in-law contracts

19  because the latter "depend[] on nothing more than the

20  unauthorized use of the work"); 4 Nimmer §§ 19D.03[B][6], [7]

21  (unjust enrichment and quasi-contract preempted).

22      In this case, we need not address whether preemption is

23  precluded whenever there is a contract claim, or only when the

24  contract claim includes a promise to pay.  Compare Montz, 649

14

F.3d at 980-81 (holding that the element of mutual assent in a contract claim can by itself provide the "extra element"), with Wrench, 256 F.3d at 457-58 (holding that the promise of payment in a contract claim provides the "extra element").  See also 4 Nimmer § 19D.03[C][2] (suggesting that a contract that "does not purport to give [the plaintiff] any protection beyond that provided . . . by copyright law itself" would be preempted).

Here the Complaint specifically alleges that the contract includes by implication a promise to pay for the use of Forest Park's idea.  See Complaint ¶ 11 (alleging that it was understood when Forest Park met with Sepiol they were "pitching . . . ideas with the object of persuading USA Network to purchase those ideas for commercial development) (emphasis added); id. ¶ 25 ("USA Network voluntarily accepted Plaintiffs' ideas knowing full well that Plaintiffs had submitted those ideas in confidence and for economic gain, and with the clear expectation of payment in the event those ideas were utilized by USA Network. . . .") (emphasis added).  The alleged contract does not simply require USA Network to honor Forest Park's exclusive rights under the Copyright Act (assuming the material at issue to be copyrightable); it requires USA Network to pay for the use of Forest Park's ideas.  A claim for breach of a contract including a promise to pay is

1  qualitatively different from a suit to vindicate a right included

2  in the Copyright Act and is not subject to preemption.[1]

3  **II.  Breach of Contract**

4      The next question we must consider is whether the Complaint

5  actually pleads an enforceable implied-in-fact contract

6  containing a promise to pay.  USA Network argues that the

7  Complaint falls short because there was no meeting of the minds

8  over the price term.  The district court decided (erroneously, in

9  our view) that contract claims based on the submission of works

10  or ideas were preempted, and thus it did not reach this issue.

11  See Forest Park Pictures, 2011 WL 1792587, at *3, 2011 U.S. Dist.

12  LEXIS 50081, at *5.

13      **A. Choice of Law**

14      Determining whether Forest Park pleaded an enforceable

15  implied-in-fact contract requires us to examine state law and,

16  because it matters, we must decide which state's law applies.

17  Forest Park contends that California law governs the contract;

18  USA Network argues for New York law.  Neither party suggests that

19  the choice of law can be determined from the implied contract

20  itself.

---

[1]We need not here consider whether even a promise to pay may be
insufficient to avoid preemption in circumstances where, through
contracts of adhesion or similar instruments, a plaintiff uses
such promises to create a de facto monopoly at odds with federal
copyright policy.  See Arthur R. Miller, Common Law Protection
for Products of the Mind: An "Idea" Whose Time Has Come, 119
Harv. L. Rev. 703, 768-74 (2006).  That is not this case.

1        A federal court sitting in diversity jurisdiction applies

2    the choice of law rules of the forum state.  See Klaxon Co. v.

3    Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); GlobalNet

4    Financial.com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 382 (2d

5    Cir. 2006).  Under the law of New York, the forum state, the

6    first step in a choice of law analysis is to determine whether an

7    actual conflict exists between the laws of the jurisdictions

8    involved.  In re Allstate Ins. Co. (Stolarz), 81 N.Y.2d 219, 223

9    (1993); see also GlobalNet Financial.com, 449 F.3d at 382.  If

10   there is such a conflict, New York law looks to the "center of

11   gravity" of a contract to determine choice of law.  Stolarz, 81

12   N.Y.2d at 226.  Under the "center of gravity" approach, a court

13   may consider a number of significant contacts, including the

14   place of contracting, the place of performance, the physical

15   location of property that is the subject matter of the contract,

16   and the domiciles or places of business of the contracting

17   parties.  Id. at 227; see also Lazard Freres & Co. v. Protective

18   Life Ins. Co., 108 F.3d 1531, 1539 (2d Cir. 1997).  The place of

19   contracting and place of performance are given the greatest

20   weight.  Stolarz, 81 N.Y.2d at 226.

21       While neither New York nor California law is absolutely

22   clear, there does appear to be at least one conflict between the

23   two states that is relevant to Forest Park's claim: the question

24   of whether a contract can be enforced without a definite price

17

1  term.  Under California law, an implied-in-fact contract can have

2  an open price term to be filled in by industry standards.  See,

3  e.g., Whitfield v. Lear, 751 F.2d 90, 93 (2d Cir. 1984)

4  (declining to dismiss a claim under California law when the

5  plaintiff alleged that a television studio voluntarily accepted a

6  script and also that industry custom indicated a promise to pay);

7  Montz, 649 F.3d at 979.  Whether New York law follows the same

8  rule is not clear.  In Lapine v. Seinfeld, 918 N.Y.S.2d 313 (N.Y.

9  Sup. Ct. 2011), a New York court found a lack of mutual assent,

10  but also noted that "price is an essential element of a

11  contract."  Id. at 318; see also Marraccini v. Bertelsmann Music

12  Grp., Inc., 644 N.Y.S.2d 875, 877 (N.Y. App. Div. 3d Dep't 1996)

13  (dismissing an implied-in-fact contract claim on the pleadings

14  because there were open-ended terms, and industry standards that

15  plaintiff claimed could fill them were not identified).  But see

16  Nadel v. Play-By-Play Toys & Novelties, Inc., 208 F.3d 368, 376 &

17  n.5 (2d Cir. 2000) (noting that an implied-in-fact contract must

18  have mutual assent, but that it can be inferred from "the

19  specific conduct of the parties, industry custom, and course of

20  dealing") (citing Maas v. Cornell Univ., 94 N.Y.2d 87, 94

21  (1999)).

22      Given the opacity of New York law, we cannot confidently say

23  that there is no divergence between California and New York law.

24  Therefore, we next must determine the "center of gravity" of the

1    contract.  Here, almost all of the significant contacts are with

2    California: the sole face-to-face meeting between Forest Park and

3    USA Network was in California; at least part of the performance

4    (Forest Park's disclosure in writing and orally of its idea) took

5    place there; the written series treatment was physically located

6    there; two out of the three plaintiffs are California residents;

7    and, while Universal Television Network's principal place of

8    business is in New York, all of the activity related to this

9    contract took place in USA Network's California offices.  See,

10   e.g., Tri-State Emp't Servs., Inc. v. Mountbatten Sur. Co., 295

11   F.3d 256, 261 (2d Cir. 2002) (applying New York law where the

12   parties were either incorporated in New York or had their

13   principal places of business there, where the oral contract was

14   negotiated in New York, and where performance took place in part

15   in New York); Twentieth Century Fox Film Corp. v. Marvel Enters.,

16   Inc., 155 F. Supp. 2d 1, 13 (S.D.N.Y. 2001) (applying California

17   law to a contract negotiated entirely in California, and

18   performed in both New York and California).  We therefore hold

19   that California law applies.  The remaining question before us

20   thus becomes whether Forest Park has alleged an enforceable

21   contract under California contract law.

22       **B. Implied-in-Fact Contract**

23       California has long recognized that an implied-in-fact

24   contract may be created where the plaintiff submits an idea (the

19

offer) that the defendant subsequently uses (the acceptance) without compensating the plaintiff (the breach).  In Desny v. Wilder, 46 Cal. 2d 715 (1956) (en banc), the plaintiff, Desny, telephoned Billy Wilder, then a producer and writer for Paramount Pictures, and told Wilder's secretary that he had an idea for a film.  Id. at 726.  At the secretary's request, Desny forwarded to Wilder a brief synopsis of the movie idea and stated that, if the idea were used, he expected to be paid.  Id. at 726-27. Faced with the enforceability of such an agreement, the California Supreme Court held that a contract claim based on the submission of an idea could succeed either if the plaintiff received "an express promise to pay" or if "the circumstances preceding and attending disclosure, together with the conduct of the offeree acting with knowledge of the circumstances, show a promise of the type usually referred to as 'implied' or 'implied-in-fact.'"  Id. at 738.  For almost six decades following Desny, California courts have continued to recognize contract claims under the authority of that case.  See Montz, 649 F.3d at 976-77.

A plaintiff in a Desny action can prevail by proving that an idea was submitted with an understanding by the plaintiff amounting to a condition that the plaintiff would be paid for use of the idea and that the defendant knew or should have known of the condition.  See Benay v. Warner Bros. Entm't, Inc., 607 F.3d 620, 629 (9th Cir. 2010); see also Grosso v. Miramax Film Corp.,

383 F.3d 965, 967 (9th Cir. 2004) (a <u>Desny</u> claim requires that the offeree voluntarily accepted the idea knowing that use was conditioned on payment, looking to all the circumstances attending disclosure).  An express condition or promise of payment is not required.  See <u>Gunther-Wahl Prods., Inc. v. Mattel, Inc.</u>, 128 Cal. Rptr. 2d 50, 57-59, 63 (Cal. Ct. App. 2002).  Industry custom may establish an implied promise by the offeree to pay the offeror if the idea is used under the circumstances of a particular transaction.  <u>Whitfield</u>, 751 F.2d at 93; <u>Gunther-Wahl</u>, 128 Cal. Rptr. 2d at 53-61.

Here, although Forest Park does not allege that it expressly conditioned disclosure on a promise of payment, the Complaint alleges facts that, if proven, would establish that USA Network knew or should have known such a condition was implied.  Forest Park alleges that it pitched its ideas to USA Network "with the object of persuading USA Network to purchase those ideas for commercial development," and that USA Network and its agent Sepiol "at all relevant times knew (a) that writer-creators pitch creative ideas to prospective purchasers with the object of selling those ideas for compensation; and (b) that it was standard in the entertainment industry for ideas to be pitched with the expectation of compensation in the event of use." Complaint ¶¶ 9, 13.  Moreover, the Complaint alleges that USA Network accepted Forest Park's idea when it knew or should have

known of that condition by keeping the series treatment Forest

Park submitted, scheduling a meeting with Forest Park, allowing

Forest Park to pitch its idea uninterrupted, and communicating

with Forest Park after the meeting.  See Whitfield, 752 F.2d at

93 (noting that, by opening and reviewing a submitted script, a

producer might implicitly promise to pay for ideas if he uses

them, assuming the existence of an industry custom of returning

unwanted submissions unopened); Gunther-Wahl, 128 Cal. Rptr. 2d

at 53-54 (describing plaintiff's evidence of industry custom to

cut off a pitch if the offeree meant to reject an idea).  These

allegations are sufficient to plead a Desny claim under

California law.

USA Network argues that even if Forest Park did allege an

implied-in-fact agreement, the agreement would not be enforceable

because it lacks a definite price term.  California courts,

however, enforce contracts without exact price terms as long as

the parties' intentions can be ascertained.  See, e.g., Cal.

Lettuce Growers, Inc. v. Union Sugar Co., 45 Cal. 2d 474, 482

(1955) (en banc).  And California permits custom and usage (among

other extrinsic evidence) to supply absent terms.  Whitfield, 751

F.2d at 93; Cal. Lettuce Growers, 45 Cal. 2d at 482.  In Desny

itself, an enforceable contract was found even though the

plaintiff stated he expected to be paid "the reasonable value" of

his idea.  46 Cal. 2d at 727.

1    Forest Park alleges that it agreed with USA Network to be

2    paid the industry standard for its idea, which is enough under

3    California law to survive a motion to dismiss.  At trial, Forest

4    Park will have to prove that such an industry standard price

5    exists and that both parties implicitly agreed to it.  That

6    Forest Park might fail to prove its claim, however, does not

7    render the contract unenforceable as a matter of law at the

8    pleading stage.  Because Forest Park has alleged an enforceable

9    implied-in-fact contract including a promise of payment for the

10   disclosure of its idea, its claim is not preempted by the

11   Copyright Act and therefore the district court erred in

12   dismissing the Complaint.

13

14                            **CONCLUSION**

15    For the foregoing reasons, we VACATE the district court's

16   judgment dismissing Forest Park's complaint and REMAND for

17   further proceedings.

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit                    3